**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Emily H., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-2867 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Emily H.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

### 1.  Procedural History

On February 21, 2023, Plaintiff protectively filed an application for child's insurance benefits, alleging disability beginning October 2, 2019. [Administrative Record ("R.") 32.] The claim was denied initially and on reconsideration. *Id*. On November 8, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision. [R. 15-26.] The Appeals Council denied review on January 13, 2025 [R. 1], rendering the ALJ's November 8, 2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On March

---

[1]  In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]  Plaintiff filed a "Memorandum in Support of Reversing or Remanding Commissioner's Decision" [Dkt. 16], which the Court views as a motion for summary judgement. Defendant filed a "Memorandum in Support of Motion for Summary Judgement" [Dkt. 17], which the Court views as a cross motion for summary judgement.

18, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

### 2. The ALJ's Decision

In her November 8, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 32-46.] At Step One, the ALJ found that Plaintiff was under the age of 22 as of the alleged onset date and that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. [R. 34.] At Step Two, the ALJ found Plaintiff suffers from severe impairments of anxiety disorder, depressive disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and binge eating disorder.[3] *Id*. At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that met or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). [R. 35.] In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff has (i) a moderate limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a moderate limitation in concentrating, persisting or maintaining pace, and (iv) a moderate limitation in adapting or managing oneself. [R. 35-37.] The ALJ further found that the evidence of record failed to establish that Plaintiff has a "serious and persistent" mental disorder with a two-year or more history of medical treatment or a highly structured setting that has failed to afford achieving more than "marginal adjustment", meaning that Plaintiff's adaptation to the requirements of daily life is fragile and Plaintiff has a

---

[3] While Plaintiff has also been diagnosed with migraine without aura and without status migrainosus and has previously presented to a cardiology clinic for D-Transportation of the Great Arteries and ventricular septal defect status post initial BAS followed by arterial switch procedure, these conditions were deemed to be non-severe. [R. 35.]

minimal capacity to adapt to changes in her environment or to demands not already part of her daily life. [R. 37.]

> Before Step Four, the ALJ found Plaintiff has the residual functional capacity ("RFC") to:
>
> Perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can understand, remember, and carryout simple, routine and repetitive instructions; is not able to perform fast paced hourly production goals, like on an assembly line, but able to meet end of day goals; able to tolerate occasional interaction with supervisors and coworkers, but is not able to perform tandem or coordinated tasks with coworkers; able to tolerate brief and superficial interaction with the general public; and able to tolerate a predictable, routine work setting.

[R. 37.]

At Step Four, the ALJ concluded Plaintiff had no past relevant work. [R. 44.] At Step Five, after considering the Plaintiff's age, education, work experience and RFC, the ALJ found Plaintiff capable of performing jobs existing in significant numbers in the national economy. [R. 45.] Specifically, the ALJ determined Plaintiff would be able to perform the requirements of cleaner II (DOT# 919.687-014, SVP 1, medium), counter-supply worker (DOT# 319.687-010, SVP 2, medium), and kitchen helper (DOT# 318.687-010, SVP 2, medium). [R. 45.] Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. [R. 45.]

### 3. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion." *Hess*, 92 F.4th at 676. Finally, while reviewing a commissioner's decision, the Court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

**4.      Discussion**

Plaintiff claims remand is warranted because the ALJ's RFC is not supported by substantial evidence, the ALJ discounted Plaintiff's symptoms by implying that Plaintiff failed to follow prescribed treatments, the ALJ failed to meet her burden to prove that Plaintiff can work the jobs the Vocational Expert ("VE") identified, and lastly, that the ALJ's decision was based on "skewed" evidence. [Dkt. 16 at 8-16.] The Court disagrees.

**A.   The ALJ's RFC is Supported by Substantial Evidence.**

Plaintiff claims the ALJ's conclusion that Plaintiff "can tolerate interaction with supervisors, coworkers, and the general public is unsupported by substantial evidence." [Dkt. 16 at 8.] However, Plaintiff's arguments mischaracterize the RFC. The ALJ found Plaintiff is able to

4

"tolerate *occasional* interactions with supervisors and coworkers, but *is not able* to perform tandem or coordinated tasks with coworkers" and Plaintiff is "able to tolerate *brief* and *superficial* interaction with the general public." [R. 37 (emphasis added).] The ALJ's ultimate RFC is more restrictive than Plaintiff claims and is supported by substantial evidence.

The Seventh Circuit has emphasized that ALJs "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ must simply "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings[.]" *Id*. at 1054 (internal citations omitted); *see also Elder*, 529 F.3d at 415 ("[W]e must allow that decision to stand so long as the ALJ "'minimally articulate[d]'" his reasons—a very deferential standard that we have, in fact, deemed "lax.""). In creating the RFC here, the ALJ noted, among other evidence, Plaintiff's psychiatric progress notes from January 2023 through September 2024 which highlighted Plaintiff's ongoing treatment for depression and anxiety [R. 40-43], the changes made to Plaintiff's medication regimen over the years until Plaintiff started reporting improvement in symptoms with medication in 2024 [R. 40-43], State agency psychological consultants Dr. Schneider and Dr. Hudspeth's examination findings at both initial determination and on reconsideration that Plaintiff had only a moderate limitation in interacting with others [R. 43], Plaintiff's ability to spend an hour in conversation with psychological consultant Dr. Wegierek [R. 42], and Dr. Stone's psychological consultative examination which did not explicitly opine on Plaintiff's mental functional limitations but which the ALJ considered to support the RFC [R. 44]. The Court finds the ALJ met the lax minimal articulation standard by pointing to substantial evidence in the record she specifically considered that indicates Plaintiff can tolerate *occasional* interactions with supervisors and coworkers and *brief* and *superficial* interaction with the public.

5

The ALJ's conclusion that Plaintiff can understand, remember, and carry out routine and repetitive instructions is also supported by substantial evidence. Contrary to Plaintiff's claims, the ALJ did not impermissibly 'play doctor' to contradict the record. [Dkt. 16 at 12.] The ALJ observed that Dr. Stone noted Plaintiff's memory was poor during a consultative examination on December 8, 2023. [R. 41.] However, the ALJ points out that several months later, on March 5, 2024, Dr. Wegierek noted that while Plaintiff's immediate memory was impaired, her learning, recent memory, long-term memory, and cognitive faculties were all intact. [R. 41-42.] Plaintiff claims Dr. Wegierek's examination was biased because Dr. Wegierek asked the same questions that Dr. Stone asked Plaintiff just a few months prior and that improved results on the same set of questions are not necessarily indicative of Plaintiff's abilities. [Dkt. 16 at 15-16.] However, the ALJ's assessment did not stop with the improvements noted in Dr. Wegierek's report. The ALJ also discussed Dr. Schneider and Dr. Hudspeth's findings, both of whom found Plaintiff capable of performing simple, routine, repetitive tasks so long as the tasks require minimal contact with others. [R. 43.] Considering all this evidence together, the ALJ's ultimate RFC limited Plaintiff not only to simple, routine, and repetitive instructions, but also limited Plaintiff's interactions with supervisors, coworkers, and the general public. [R. 37.] As a result, the Court finds the ALJ built an accurate and logical bridge between the evidence and the RFC, supported by substantial evidence.

In claiming that the RFC is not supported by substantial evidence, Plaintiff also continuously criticizes the ALJ's reliance (and lack thereof) on Dr. Wegierek's report. As Defendant correctly described in its response, Plaintiff "faults the ALJ for both not crediting enough and giving too much credit to the evaluation of consultative psychologist Anna Maria Wegierek, Psy.D." [Dkt. 17 at 1.] The ALJ found Dr. Wegierek's medical opinion not persuasive

on the basis that Dr. Wegierek (1) opined on an issue reserved to the Commissioner,[4] (2) indicated that the "best information about [Plaintiff's] functioning would be from requesting medical documentation generated by her psychiatrist as well as therapist" [R. 499], and (3) failed to provide relevant supporting explanations for her opinion. [R. 44.] However, the ALJ did still consider the other medical evidence included in Dr. Wegierek's report alongside Plaintiff's psychiatric treatment notes and the other evidence of record. [R. 44.] Yet, Plaintiff alleges that the ALJ's RFC is unsupported by substantial evidence because the ALJ inconsistently relied on Dr. Wegierek's opinion, which allegedly includes "misclassified and mishandled medical opinion evidence." [Dkt. 16 at 8.] Plaintiff further claims the ALJ "dismissed the supportive portion of [Dr. Wegierek's opinion] on technical grounds while treating the less supportive portion as objective evidence" and that the ALJ's reliance on the evaluation as "objective medical evidence" is erroneous. [Dkt. 16 at 8-9.] The Court unpacks these allegations further below.

There are several different categories of evidence, and Plaintiff seems to mischaracterize the different portions of Dr. Wegierek's report. Under the regulations, *objective* medical evidence is "medical signs, laboratory findings, or both" while a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations." 20 C.F.R. § 404.1513(a)(1)-(2). In contrast, *other* medical evidence is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). While the ALJ did not find Dr. Wegierek's medical opinion itself to be

---

[4] Dr. Wegierek opined that the Plaintiff "definitely experiences anxiety that may stop her from being able to participate in gainful employment" and that her "depression would stand in the way of gainful employment also." [R. 499] As the ALJ noted in her decision, statements about a claimant's ability to work is an issue reserved to the Commissioner under 20 CFR 404.1520b(c) and 20 CFR 416.920b(c).

persuasive [R.44], it was still proper for the ALJ to consider the other medical evidence included with Dr. Wegierek's report. *See also Elder*, 529 F.3d at 415 (holding that an "ALJ may still look to the opinion after opting to afford it less evidentiary weight.").

Additionally, it is clear the ALJ did not rely on Dr. Wegierek's medical opinions in forming the RFC but did highlight sections of Dr. Wegierek's report for the record in her decision. For example, Plaintiff notes that Dr. Wegierek opined that Plaintiff's "ability to take care of her day-to-day needs were observed to be intact" because Plaintiff was able to "go to pick up her medications via Uber." [Dkt. 16 at 9.] However, it seems to the Court the ALJ used this as an opportunity to emphasize Plaintiff's difficulties with such day-to-day activities, pointing to Plaintiff's testimony that her mother usually accompanies her when she takes an Uber and Plaintiff does not go out on her own. [R. 42.] Similarly, Plaintiff claims the ALJ "justifies her conclusions by looking to Dr. Wegierek's assertion that [Plaintiff's] anxiety and depression was not being properly managed with medication." [Dkt. 16 at 10.] However, as Plaintiff points out, the record shows Plaintiff had experimented with several different medications and the ALJ also made a note of this throughout her decision. [R. 40-44.] The ALJ's reference to Dr. Wegierek's conclusion about Plaintiff's lack of medication management was simply a summary of what Plaintiff reported to Dr. Wegierek. [R. 499.] Dr. Wegierek's report went on to clarify that "it is hard to believe that those professionals would not cover the claimant with appropriate medication. This may indicate that the claimant was not honest with this clinician and/or is not forthcoming with her mental health treatment providers." [R. 499.] Consequently, Dr. Wegierek suggested Plaintiff's functioning might be better evaluated from documentation from her psychiatrist and therapist, which is one of the reasons the ALJ found Dr. Wegierek's opinion not persuasive. [R. 44, 499.] For these reasons, the Court ultimately finds the ALJ took a balanced approach to Dr. Wegierek's report.

Despite Plaintiff's claims to the contrary, the ALJ also complied with the requirements of Social Security Ruling ("SSR") 16-3p. As Plaintiff notes, SSR 16-3p requires an ALJ to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [their] conclusions." SSR 16-3P. The ALJ is required to consider statements a claimant makes about the intensity, persistence, and limiting effects of symptoms against *all* of the evidence in the record and only if the claimant's statements are consistent with such other evidence in the record will an ALJ determine that the individual's symptoms are likely to reduce their capacity for work-related activities. *Id*. Here, Plaintiff claims the ALJ failed to comply with SSR 16-3p because the ALJ did not "assess the consistency of [Plaintiff's] statements about her social anxiety" or her "depression and day sleeping" with the record. [Dkt. 16 at 11, 13.] More particularly, Plaintiff claims the ALJ did not assess Plaintiff's testimony about her social anxiety causing her to quit her last job, her difficulties at the pharmacy, her use of music to calm herself, her panic attacks, the fact that Plaintiff does not speak with her two friends, or Plaintiff's statements about her depression, corresponding sleeping habits, and slowed activity in the mornings. *Id*. However, the ALJ did discuss Plaintiff's testimony about these conditions and corresponding symptoms and did so beyond simply noting that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." [R. 40.] The ALJ explicitly made note of Plaintiff's testimony and her statements about not graduating high school because of her anxiety, her job at Culvers that she quit because it worsened her anxiety, her fear of being around people and in public, her preference to order things online to avoid going to physical stores due to her anxiety, the impact of loud environments on her anxiety, her sleeping patterns, her use of headphones to listen to calming music, her preference of playing single player

9

games, and her ability to do laundry in her apartment building, again noting that Plaintiff testified that her mom usually goes with her to the laundry room. [R. 38-40.] After listing the symptoms Plaintiff identified in her testimony, the ALJ walked through Plaintiff's medical records, Plaintiff's reports of her symptoms to her physicians, the different medication regimens Plaintiff has tried, and the reported improvements in Plaintiff's symptoms with medication which the ALJ noted several times was contrary to Plaintiff's testimony. [R. 40-43.] It is clear the ALJ considered Plaintiff's statements against all the evidence of record in assessing Plaintiff's limitations and forming the ultimate RFC.

Next, Plaintiff faults the ALJ for not creating an RFC with additional limitations to account for additional direction or reminders Plaintiff may need in a work setting or any absences or tardies Plaintiff may have because of her anxiety and depression, claiming that the ALJ's failure to do so is unsupported by substantial evidence. [Dkt. 16 at 13.] However, the ALJ's decision not to accommodate such a limitation seems to suggest the ALJ did not find evidence to substantiate a limitation on this point. In fact, the ALJ specifically highlighted Plaintiff's psychiatric progress notes which reflect that Plaintiff reported her medication was helping and she was feeling less depressed. [R. 42.] Plaintiff's claim that the ALJ failed to accommodate additional limitations, without pointing to any evidence or medical opinion in the record that demands a more restrictive limitation, is merely an improper request for the Court to reweigh the evidence. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [Plaintiff] offered no opinion from any doctor to set…limits, greater than those the ALJ set."); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). The Court will not do so here.

**B. The ALJ Did Not Discount Plaintiff's Symptoms by Noting That Plaintiff Failed to**

**Follow Prescribed Treatments.**

Plaintiff next claims the ALJ improperly used Plaintiff's failure to take medications as prescribed as a reason to reject the severity of Plaintiff's statements. [Dkt. 16 at 14.] However, the ALJ did not discredit Plaintiff's symptoms; rather, the ALJ simply noted the fact that Plaintiff did not take medications as prescribed *together* with Plaintiff's reports that some medications did not work or caused side effects. [R. 42-43.] Yet, Plaintiff fails to mention that before the ALJ addressed Plaintiff's own reports to her psychiatrist that she did not always take medications as prescribed as she sometimes forgets to take her medication, the ALJ also noted that contrary to Plaintiff's testimony about medication not being helpful, according to Plaintiff's treatment notes from June and September 2024, Plaintiff reported feeling less depressed (though still anxious) and that the medication was *helping*. [R. 42, 507, 515.] As required, the ALJ considered Plaintiff's testimony about her symptoms together with all of the evidence in the record, including Plaintiff's reports about improved symptoms with the use of medication. 20 C.F.R. 404.1529(c)(3) ("We will consider all of the evidence presented…includ[ing]:…(iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms[.]"). The Court finds no error here.

**C. There is No Conflict Between the RFC and the Jobs the ALJ Identified.**

At Step Five, in reliance on the VE's testimony, the ALJ determined Plaintiff would be able to perform the requirements of cleaner II (DOT# 919.687-014, SVP 1, medium), counter-supply worker (DOT# 319.687-010, SVP 2, medium), and kitchen helper (DOT# 318.687-010, SVP 2, medium). [R. 45.] Plaintiff claims the ALJ's RFC limitation to "simple, routine and repetitive instructions" is inconsistent with the Dictionary of Occupational Titles ("DOT") level

11

two reasoning requirements which require an individual to "carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations". [Dkt. 16 at 14-15.] Dictionary of Occupational Titles Appendix C: Components of the Definition Trailer. The Court finds no conflict here, and no apparent conflict that would have triggered the ALJ's obligation to question the VE further under SSR 00-4p.

Plaintiff correctly notes that Courts have not reached a consensus on whether there is inherently a conflict or disconnect between limitations of simple, routine tasks and a DOT reasoning level of two. [Dkt. 18 at 2-3.] While some Courts have remanded cases to resolve what they perceive to be a conflict, other Courts, including Courts in this District, have found "no inherent inconsistency between simple work restrictions and Reasoning Level 2 or Reasoning Level 3 positions." *Stephen M. V. Berryhill*, No. 17-cv-7608, 2019 WL 2225986, at *9 (N.D. Ill. May 23, 2019); *Mendel v. Berryhill*, No. 17-cv-540, 2019 WL 1858510, at *6 (N.D. Ill. Apr. 25, 2019); see also *Vanhphenh S. v. Saul*, No. 18-cv-6121, 2021 WL 1315633, at *5 (collecting cases concluding that simple, routine work restrictions are not necessarily inconsistent with DOT reasoning level 2 jobs). In fact, the Seventh Circuit has held that "even workers who are markedly limited in their ability to understand, remember, and follow detailed instructions might still be able to perform jobs requiring level 3 reasoning development." *Sawyer v. Colvin,* No. 12-cv-1749, 512 F. App'x. 603, 611 (7th Cir. 2013) (citing *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 366-367 (8th Cir. 2007)).

Plaintiff argues that the Seventh Circuit's decision in *Surprise v. Saul*, 968 F.3d 658 (7th Cir. 2020) should not control here because the VE in *Surprise* defined simple instructions as those with one-to-three steps and the Court considered that detail to be "pivotal" in its finding that there was no conflict between the RFC and DOT reasoning level 2. [Dkt. 17 at 3-4.] Instead, Plaintiff

12

suggests that the facts of this case are more akin to the facts of a case in the Fourth Circuit where the Court remanded the case after finding that the Plaintiff in that case who was "limited to short, simple instructions may not be able to carry out detailed but uninvolved instructions." *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019). However, the Court in *Thomas* went on to clarify that in remanding that matter, they were not creating "a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved." *Id.* at 314.

In concluding whether there is any conflict between the RFC and the DOT's reasoning levels, Courts have also looked at any additional limitations that an ALJ places in the RFC. *Vanhphenh S.*, 2021 WL 1315633, at \*6 (finding no conflict between the VE's testimony and the DOT after looking towards the additional restrictions the ALJ placed in claimant's RFC beyond simple, routine work, including "simple work of a routine type with normal workplace breaks specifically to accommodate the fact that Claimant lacks the ability to understand, remember and carry out detailed instructions." (internal citations omitted)). Similarly, here, the ALJ not only limited Plaintiff to "simple, routine and repetitive" instructions, but also limited Plaintiff to a "predictable, routine work setting", seemingly to further accommodate Plaintiff's mental limitations with a more controlled environment. [R. 37.] Consistent with the decisions of this Court and the Seventh Circuit, the Court finds no conflict between the ALJ's RFC and the positions that the ALJ concluded the Plaintiff is capable of performing.

Additionally, while the ALJ had an "affirmative responsibility" to resolve any conflicts between the DOT and VE testimony under SSR 00-4p[5], given that the Court finds that there was no conflict between the DOT and VE's testimony about the jobs that Plaintiff can perform, there is no basis for remand. *Stephen M.*, 2019 WL 2225986 at \*10 ("Because the Court concludes that

---

[5] While the Court notes that SSR 00-4p has been rescinded, the Court addresses this argument to clarify that the ALJ did not err while the regulation was in effect.

13

there is no conflict—much less an apparent conflict—Plaintiff is not entitled to remand on based on the ALJ's reliance on the vocational expert."). Consequently, the Court finds the ALJ met her burden to prove that the Plaintiff can work the jobs identified with a level two reasoning requirement; the Court will not remand on this basis.

### D. The ALJ Did Not Rely on "Skewed" Evidence.

Finally, Plaintiff claims that Dr. Wegeriek's report is "deeply flawed" and that the ALJ's reliance on the report "constitutes a reliance on a skewed version of the evidence." [Dkt. 16 at 16.] Plaintiff argues that Dr. Wegeriek's report "relies on testing biased by the prior CE, relies on factual misstatements, plays fast and loose with logic, includes indecipherable assessments, and fails to thoroughly assess all testing results." *Id*. Citing the Seventh Circuit's decision in *Thorlton v. King*, 127 F.4th 1078 (7th Cir. 2025), Plaintiff claims remand is warranted. However, the Court does not find that the ALJ was presented with, or that she herself presented, a skewed version of the evidence. *Thorlton* 127 F.4th at 1082 ("In short, this is not a case where the ALJ presented a 'skewed version of the evidence,' or failed to 'minimally discuss' contrary evidence, so reversal is not warranted on this ground." (internal citations omitted)).

As discussed above, the ALJ found Dr. Wegeriek's opinion not persuasive. [R. 44.] When discussing the other evidence in Dr. Wegeriek's report, the ALJ discussed it alongside other evidence of record, including contradictory evidence. As discussed above, Dr. Wegeriek's report noted that Plaintiff is able to "go to pick up her medications via Uber" and further opined that "[s]uch activity requires planning, as well as ability to socialize with others. Since the claimant was successful in doing so, her ability to take care of her day-to-day needs were observed to be intact." [R. 498.] When the ALJ discussed this section of Dr. Wegeriek's report, the ALJ noted Plaintiff's contradictory testimony. [R. 42.] Further, the ALJ's ultimate RFC, which limits

14

Plaintiff's interactions with supervisors, coworkers, and the general public, makes clear that the ALJ did not rely only on Dr. Wegeriek's report, but on all the evidence of record. The ALJ detailed Plaintiff's testimony, highlighted where Plaintiff's testimony seemed to contradict the medical opinions and vice versa, considered Plaintiff's medication history, evaluated Plaintiff's progress notes and the State agency consultants' findings, and drew an accurate and logical bridge from all of this evidence to the ultimate RFC. [R. 37-44.] The Court cannot find that the ALJ was presented with or that the ALJ herself presented a skewed version of the evidence where the ALJ seems to have considered all of the evidence of record, including contradictory evidence. *Moore v. Colvin*, No. 13-cv-2460, 743 F.3d 1118, 1123 (holding that an ALJ presents a skewed version of the evidence where the ALJ does not "confront evidence that does not support her conclusion and explain why that evidence was rejected"). The Court cannot remand on this basis.

### 5. Conclusion

For the reasons detailed above, the Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 16] is DENIED and Defendant's motion for summary judgment [Dkt. 17] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: March 11, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge

15